1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 10-0177 SBA (LB) |
| Plaintiff, | ) ) | |
| v. | ) ) | RELEASE ORDER |
| JOSE ALBERTO VEGA MUNIZ, | ) ) | |
| Defendant. | ) ) ) | |

## I.  INTRODUCTION

A grand jury in the Northern District of California charged defendant Jose Alberto Vega Muniz with illegal reentry following deportation in violation of 8 U.S.C. § 1326.  Following the government's motion for a detention hearing under the bail statute based on serious risk of flight, *see* 18 U.S.C. § 3142(f)(2)(a), the Court held hearings on May 19 and 28, 2010.  For the reasons stated on the record at the hearing, in Pretrial Services' bail study, and in this order, the Court ordered Muniz released on conditions that are set forth in the attached "Order Setting Conditions of Release and Bond Form," which is a standard one-page carbon-copy form that is used in the Northern District of California.

## II.  RELEVANT LEGAL STANDARDS

Under the bail statute, 18 U.S.C. § 3142, a court must order the release of a defendant on a

RELEASE ORDER
(CR 10-0177 SBA (LB))

personal recognizance or unsecured appearance bond unless release on a bond alone will not reasonably assure the defendant's appearance or the safety of the community or another person. *See* 18 U.S.C. § 3142(b).  If a court determines that release on a bond alone presents a risk of nonappearance or a danger to any person or the community, then the court must choose "the least restrictive further condition[s]" that will assure the defendant's appearance and the safety of the community or another person.  *See id.* § 3142(c) (listing thirteen possible conditions of release and empowering the court to impose "any other condition that is reasonably necessary" to assure the defendant's appearance and the community's safety).  The court must order a defendant detained if – "after a hearing pursuant to the provisions of subsection [3142](f)"-- the court finds that conditions cannot be fashioned to assure the defendant's appearance in court or the safety of the community or another person.  *See id.* § 3142(e)(1).

Under section 3142(f), the court "shall hold" a hearing only in certain cases, including on the government's motion in cases involving a serious risk of flight.  *See* 18 U.S.C. § 3142(f)(2)(a). At the hearing, the parties generally proceed by proffer, and the rules of evidence do not apply. *See id.* § 3142(f).  At the hearing, the court determines whether any conditions in section 3142(c) will reasonably assure the defendant's appearance and the safety of the community or another person.  *See id.* § 3142(f).  Clear and convincing evidence must support a finding that conditions of release will not reasonably assure the safety of the community or another person, *see id.*, and a preponderance of evidence must establish that conditions will not reasonably assure a person's appearance.  *See United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985).  The court generally must hold the detention hearing immediately at the defendant's first appearance, but the government may continue the hearing for three days and the defense may continue it for five days (or longer for good cause).  *See id.*

In evaluating whether conditions can be fashioned under section 3142(c) to reasonably assure the defendant's appearance and the safety of the community or another person, a court "shall consider" the factors in section 3142(g), including (1) the nature and circumstances of the offense, including whether the offense is one of certain enumerated crimes (including a controlled substance offense), (2) the weight of the evidence, (3) the history and characteristics

1  of the person (including his job, financial resources, family ties, community ties, substance abuse

2  history, physical and mental condition, character, criminal history, past conduct, track record in

3  appearing court, and whether at the time of arrest the person was on supervision for parole,

4  probation, or other release in a pending criminal case), and (4) the nature and seriousness of the

5  danger to any person or the community posed by the person's release.

### III.  FACTS RELEVANT TO BAIL DECISION

7  The indictment alleges two prior deportations:  September 18, 2001, and November 23, 2009.

8  *See* docket # 1.

9  The bail study reveals that Muniz has the following criminal convictions:

| Conviction | Date | Sentence |
|---|---|---|
| Felony Marijuana For Sale | 8/16/01 | 3 yrs. prob, 75 days jail |
| Misdemeanor Battery | 3/4/03 | 24 mos. prob, 1 day jail conditional |
| Misdemeanor Driving Offense* | 3/22/05 | 24 mos. ct. probation, 2 days jail |

*arrest was a DUI but dispo
not apparent from bail study

15  The bail study reveals two possible failures to appear: (1) 12/26/02 in the misdemeanor

16  battery case, and (2) 2/18/10 for "Failure to Appear After Written Promise."  The government

17  could not provide any more information.  As to the first, the bail study reveals that it predates

18  Muniz's successful completion of the inpatient program at the NewBridge Foundation in 2004.

19  As to the second, the bail study states that one day later on February 19, 2010, the defendant was

20  "en route to ICE," meaning, he was in custody (which might explain a failure to appear).

21  According to the government, an ICE detainer has been lodged, and the bail study states that

22  Muniz "appears to have an outstanding warrant of removal" with ICE.

23  Approximately 20 members of Muniz's family were at both bail hearings and fully filled one-

24  half of the seating in the courtroom.  At least 14 were willing to co-sign on an unsecured bond

25  and are listed in Pretrial Services' bail study.  Muniz's uncle offered to post his house as

26  collateral, as did another friend, but it appears that in this down economy, the mortgage on both

27  may exceed the equity value.  According to the bail study, several potential co-signers have good

28  jobs and a good monthly income.  As to those family members who co-signed on the bond, the

1   Court advised them of the penalties for lying under oath and had them swear under penalty of

2   perjury that the salary information that they provided to Pretrial Services (as summarized in the

3   bail study) was accurate.

4        The bail study revealed -- and the government did not challenge -- other relevant facts about

5   Muniz.  He is 30, moved to California in 1986 with his family (when he was 6), and has lived

6   here since.  According to Muniz, he has traveled to Mexico approximately 30 times since he

7   moved here.  Muniz had legal residency status until he was deported.  (According to the

8   government, his status was revoked when he was deported in September 2001 following his

9   August 2001 conviction).  He lives with his parents, who are both disabled, in Oakland, he has

10  weekly contact with his siblings in the Bay Area, and he has worked full-time at DeSilva Gates

11  Construction in Dublin, California, for the past seven years and earns $3,200 per month.  His

12  parents verified his employment.   He also has been in a relationship for one year, and as the

13  packed courtroom shows, he has substantial support from his family and friends.

14       Based on all of these factors, Pretrial Services recommended release on a $50,000 secured

15  bond, co-signed by the parents and two other sureties.

16       Defense counsel also proffered additional information about the immigration proceedings.

17  (An immigration attorney has come to all prior appearances but was sick today with the flu.)

18  The immigration attorney has two substantial challenges to the prior deportations:  (A) the first

19  deportation was procedurally flawed (which would invalidate the second deportation too, and

20  (B) the prior felony marijuana case had a procedurally-flawed plea hearing.   Absent a valid

21  predicate felony, Muniz might be able to readjust his immigration status back to a legal status.

22  All of these factors militate in favor of bail in the immigration case, and the immigration attorney

23  believes that bail is likely.

                              IV.  RELEASE ORDER

25       Following a hearing under 18 U.S.C. § 3142(f), and considering the factors set forth in

26  section 3142(g), the Court finds that a combination of conditions in section 3142(c) will

27  reasonably assure Muniz's appearance in this case and the safety of any other person or the

28  community.  Here, the government did not argue -- and the record does not suggest -- that Muniz

RELEASE ORDER
(CR 10-0177 SBA (LB))                    4

1   poses any danger to the community.  The only issue was whether Muniz was a serious risk of

2   flight under the bail statute, *see* 18 U.S.C. § 3142(f)(2)(a).  In holding that he was not, and that

3   conditions could be fashioned to assure his appearance, the Court considered the following facts

4   and 3142(g) factors.

5       A.  The Nature and Circumstances Of the Offense and the Weight Of the Evidence

6       The weight of the evidence is the least important factor, *see, e.g., United States v. Gebro*, 948

7   F.2d 1118, 1121 (9th Cir. 1991), which makes sense because the inquiry under the bail statute

8   generally is whether the person is a flight risk or poses a danger to another person or the

9   community.  *See* 18 U.S.C. § 3142(b) & (c).  Still, both the nature of the charge and the weight

10  of the evidence are relevant to the Court's assessment of flight risk or danger.

11      Here, the charged offense is an immigration offense, which -- on its face -- raises a concern

12  about a defendant's legal status and flight risk.  On the other hand, there may be issues about the

13  validity of the predicate offenses supporting the deportations and thus the charged offense.  On

14  balance, the fact of the immigration offense plus the existence of a removal warrant raise some

15  concerns about flight risk.  *See, e.g., United States v. Xulam*, 84 F.3d 441, 443-44 (D.C. Cir.

16  1996) (suggesting that a detainer and the potential of deportation are relevant to assessing flight

17  risk but holding that the INS's lodging of a detainer did not by itself justify detention).

18      B.  The History and Characteristics of Muniz

19      As set forth above, Muniz has a steady and well-paying job that he has held for seven years,

20  an established relationship, and substantial familial and community support.   He was raised in

21  the Bay Area, and his extensive family lives here.  He lives with his parents and sees his siblings

22  regularly, and the courtroom on both May 19 and May 28 was packed with at least 20 family

23  members and possibly more.  Family members were willing to post their houses (though the

24  value might be less than what is owed on the mortgage), and they were willing to co-sign on

25  bonds.

26      C.  Conclusion and 3142(c) Conditions

27       The Court's inquiry here is not whether Muniz is guilty of the offenses, which why the

28  weight of the evidence is the least important factor in the Court's bail inquiry.  *See Gebro*, 948

1    F.2d at 1121.  Instead, given that the government did not argue (and there is no evidence of)

2    danger to the community), the Court's inquiry is whether – considering the factors in section

3    3142(g) – any conditions in section 3142(c) will reasonably assure Muniz's appearance.  The

4    Court finds that the conditions in the attached bond form reasonably assure his appearance and

5    community safety, including the conditions that he continue to reside with his parents, that his

6    parents act as custodians, and that he sign an unsecured personal recognizance bond in the

7    amount of $50,000 cosigned by his uncle Francisco Macias and his cousin Franciso Omar

8    Macias Muniz (each for $50,000) and his sister Maria Muniz (in the amount of $25,000).

9        The Court was not persuaded by the government's arguments that Muniz's trips to Mexico,

10   the ICE detainer, and the failures to appear show risk of flight.

11       As to the trips to Mexico, Muniz told Pretrial about his travel.  It is not unusual that

12   someone originally from Mexico with legal status in this country would visit Mexico.  The

13   government did not really argue that Muniz might flee there: the whole point of going into

14   immigration custody is to try to bail out, challenge his prior deportations and felony conviction,

15   and adjust his status (if he can) to a legal status.  If he were successful, that might affect the

16   pending federal charge.  Given his substantial familial support and life-long ties to the Bay Area,

17   the Court was entirely convinced that the last thing Muniz wants to do is go to Mexico.  In any

18   event, he has no passport or travel documents.

19       As to the detainer, in fact, ICE "has itself addressed any concerns regarding [Muniz's] . . .

20   risk of flight by lodging a detainer . . ., which permits his retention for 48 hours after he is

21   otherwise ordered released, and at that point, the agency may opt to take appellant into custody

22   pending deportation proceedings."  *Xulam*, 84 F.3d at 443-44 (holding that a detainer alone did

23   not establish grounds for detaining a defendant who was not a flight risk) (collecting cases).

24   Moreover, as past cases demonstrate, sometimes defendants do bail out of immigration custody

25   (as Muniz's attorneys believe he will).  If Muniz does, the conditions here satisfies any concern

26   about flight risk, and if he does not (and during the pendency of any attempt to seek bail), the

27   ICE case agent can bring Muniz to his court appearances.  ICE has done so in other cases and

28   will do so here.  (The government can verify with the agent whether a writ is necessary.)  The

RELEASE ORDER
(CR 10-0177 SBA (LB))                    6

1    agent can also make sure that the immigration file reflects the pending federal case, and this

2    Court will do the same in this order.  Defense counsel also said he would keep the Court and the

3    government apprised of the immigration proceedings, and if any warrant of removal becomes

4    final or if there is a danger of deportation, the defendant can be writted over and remanded into

5    custody.

6        As to the failures to appear, the government could not provide any information about them.

7    The first predates Muniz's successful completion of residential drug treatment, and the second is

8    unclear and possibly resulted from Muniz's custody based on his prior deportation.

9        In sum, the government has not established that Muniz is a flight risk.  Indeed, the Court

10   does not believe that he will offend while on pretrial release, otherwise pose a danger to the

11   community, or pose a flight risk.  The Court finds that the conditions in the attached bond form

12   reasonably assure Muniz's appearance.  The Court elaborates on two conditions here.

13       1.  Unsecured Bond Co-Signed By Family Members.

14       Pretrial Services recommended a $50,000 secured appearance bond, and the Court imposed a

15   $50,000 unsecured appearance bond signed by Muniz and co-signed by his uncle and cousin

16   (each for $50,000) and sister (for $25,000).   The government suggested that each co-signer was

17   a surety and must execute an agreement to forfeit property of an ascertainable value (here, either

18   $50,000 or $25,000) and to provide proof of assets to back up that agreement. *See* 18 U.S.C. §

19   3142(c)(1)(B)(xii) (permits a defendant to be released on a bail bond with solvent sureties and

20   requiring sureties to execute such an agreement); Fed. R. Crim. P. 46(e) (requiring sureties to

21   sign an affidavit demonstrating that they have adequate assets).  The implication is that the co-

22   signers here could not qualify because they have no assets.  (One co-signer has a house that

23   likely has no equity.)

24       This argument fails because the Court did not have the family members sign as sureties.

25   Instead, based on an assessment of their income (and after questioning them about their income

26   under penalty of perjury), the Court had them co-sign on an unsecured bond.

27       The Court has authority to have an unsecured bond co-signed by these family members.   The

28   bail statute contemplates that the Court must fashion the least-restrictive conditions necessary to

RELEASE ORDER
(CR 10-0177 SBA (LB))                    7

1   address flight risk. *See* 18 U.S.C. § 3142(c)(1)(B). It then lists thirteen possible conditions

2   (including a bail bond with solvent sureties) that the Court *may* impose and also contains a

3   fourteenth provision allowing the Court to impose "any other condition that is reasonably

4   necessary" to assure Muniz's appearance and community safety. *See id.* § 3142(c)(1)(B)(xiv).

5   More specifically, the statute reads as follows:

6       If the judicial officer determines that release described in subsection [3142](b) [release on a
        personal recognizance or unsecured appearance bond] . . . will not reasonably assure the
7       appearance of the person . . . or the safety of any other person or the community, such
        judicial order *shall order the pretrial release of the person* –

8                           *           *           *

9       (B) subject to the *least restrictive further condition, or combination of conditions,* that the
        judicial officer determines will reasonably assure the appearance of the person as required
10      and the safety of any other person or the community, which may include the condition that
        the person —

11      [lists thirteen possible conditions like the bail bond with sureties]

12                          *           *           *

13      (xiv) satisfy any other condition that is reasonably necessary to assure the appearance of the
        person as required and to assure the safety of any other person and the community.

14

15  *See* 18 U.S.C. § 3142(c)(1) and (c)(1)(B) (emphasis added).

16      Thus, 3142(c)(1)(B)'s list allows the imposition of "further" conditions, not just replacement

17  conditions. While the Court could require a bail bond with solvent sureties under section

18  3142(c)(1)(B)(xiii), it is not requiring that here. That means that no forfeiture agreement or Rule

19  46(e) affidavit is required because the term "surety" -- as it is used in section 3142(c)(1)(B)(xiii)

20  and in Rule 46(e) -- applies only when the Court imposes a condition that requires proof of

21  currently-sufficient assets. That is not the case here. Instead, the Court imposes this condition

22  under section 3142(c)(1)(B)(xiv)'s catch-all provision as the least-restrictive condition needed to

23  address flight risk. *See United States v. Thomas*, 619 F. Supp. 1083, 1085-86 (N.D. Cal. April

24  29, 2009) (reaching this conclusion and noting that this procedure is employed routinely

25  throughout the federal courts).

26      The Court also notes that section 3142(c)(2) prohibits it from imposing "a financial condition

27  that results in the pretrial detention of a defendant." Here, the Court was able to fashion

28  conditions to address flight risk short of requiring a financial condition (actual assets) that would

RELEASE ORDER
(CR 10-0177 SBA (LB))                    8

1    have resulted in Muniz's detention.

2         The Court also conducted an inquiry similar to that required by section 3142(c)(B)(xii),

3    which requires the surety to provide the Court with information about the surety's assets and

4    liabilities. The Court inquired into the co-signers' income, and they all affirmed the information

5    that they gave Pretrial Services. The Court instructed Muniz and the co-signers that the bond

6    was like a mortgage that they promised to pay in the event that Muniz violates the terms of his

7    supervision. The Court emphasized – as part of its standard surety advisement – the risks to all

8    co-signers if Muniz does not comply with the conditions of his release and the serious nature of

9    their voluntary agreement to stake their financial future on his compliance. The Court is

10   confident that the bond assures Muniz's compliance in that he risks his family's financial future

11   if he violates the terms of his release.

12        The Court also has authority to impose this condition under the same catch-all provision in

13   section 3142(c)(1)(B)(xiv).

14        2.  Parents As Custodians

15        The Court considered having the parents co-sign the bond too but ultimately did not require

16   it because they are disabled and on a fixed income. Instead, they agreed to act as custodians, and

17   both promised to help supervise Muniz. The Court advised the parents -- as it advised all co-

18   signers -- of the charge, the penalties, the conditions of supervision, and the consequences if

19   Muniz violates any conditions of supervision. As the Court explained to the custodians and to

20   Muniz, a custodial agreement means that the parents are promising to help supervise Muniz, both

21   by their continued support for him but also by helping to ensure that he complies with the terms

22   of his pretrial supervision. As the Court instructed, if the custodians learn that Muniz violates

23   any terms of pretrial supervision, it is their obligation to advise the Court and to call Pretrial

24   Services immediately. If they do not, it may be considered contempt of court that can be

25   punishable criminally (by jail and a fine) or civilly (by a fine). The Court emphasized to

26   everyone that it is a very serious promise to act as custodian, and that if Muniz violates the terms

27   of his supervision, he risks consequences not just to himself, but to his parents who risk civil or

28   criminal contempt if he violates the Court's orders.

RELEASE ORDER
(CR 10-0177 SBA (LB))                    9

The Court also imposes this condition under section §3142(c)(1)(B)(xiv)'s catch-all provision.

## V.  CONCLUSION

The Court orders Muniz released pursuant to the conditions in the attached "Order Setting Conditions of Release and Appearance Bond."  At the government's request, the Court stays its order until 5 p.m. on Tuesday, June 1, 2010, to give the government an opportunity to evaluate whether it will appeal the order.   The court asked the government to notify it by 4 p.m. on Friday, May 28, 2010, if it was able to determine that it would not appeal the order.

## VI.  NOTICE TO IMMIGRATION AUTHORITIES

The government and defense counsel are directed to provide a copy of this order and the indictment to the immigration authorities.  The government may satisfy this obligation through the ICE case agent, and the defense may do so through the pending immigration proceedings.

The immigration authorities are specifically advised that there is a pending federal criminal indictment in this case, and it should notify the government of any warrant of removal before it is executed.  Muniz should not be deported while there is a pending criminal case.  Instead, if he is in immigration custody, he should be delivered to the ICE agent -- through a federal writ if necessary -- until the federal case is no longer pending and for each of his federal court dates.

The case is currently set for further proceedings before Judge Armstrong on Tuesday, June 8, at 9 a.m.

IT IS SO ORDERED.

DATED: May 28, 2010

_____
LAUREL BEELER
United States Magistrate Judge

RELEASE ORDER
(CR 10-0177 SBA (LB))                    10